IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONI DU PREEZ, | ) | CIVIL NO. 14-00171 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICK BANIS, DON CARANO, FRED | ) | |
| SCARPELLO, JOHN MACKALL, ET | ) | |
| AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 38]**

On August 4, 2014, Defendants Rick Banis, Don Carano,

Fred Scarpello, John Mackall, individually and as Trustees of the

Estate of William Pennington ("the Trustee Defendants"),

Kent Green, Racquel Bridgewater,[1] WNP Enterprises, Inc., and

Western Equities, LLC (all collectively, "Defendants") filed

their Motion to Dismiss First Amended Complaint [Doc. 38].  [Dkt.

no. 42.]  Pro se Plaintiff Roni Du Preez ("Plaintiff") filed her

memorandum in opposition on October 9, 2014, and Defendants filed

their reply on October 20, 2014.  [Dkt. nos. 60, 64.]  Plaintiff

also filed a surreply on October 27, 2014.  [Dkt. no. 66.]  On

October 24, 2014, the Court issued an entering order ("EO")

finding this matter suitable for disposition without a hearing

_____

[1] Plaintiff erroneously named Defendant Racquel Bridgewater
as Rachel Bridgewater.  See First Amended Complaint at pg. 1;
Motion at 1.

pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). [Dkt. no. 65.] On November 26, 2014, this Court issued an EO directing Defendants to file the trust documents relevant to the Motion, and Defendants did so on December 10, 2014. [Dkt. nos. 68, 73.] After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

<u>BACKGROUND</u>

In January 2005, William Pennington hired Plaintiff to be the "Manager/Housekeeper/Caretaker" of his residence located at 4340 Melianani Drive in Wailea, Hawai`i ("the Pennington Residence"). [First Amended Complaint, filed 7/21/14 (dkt. no. 38), at ¶ 6.[2]] The duties of the position included attending to "Mr. Pennington and/or Mr. Pennington's wife and/or guests and/or entourage" when they were staying at the Pennington Residence, as well as maintaining the residence and the Penningtons' vehicles. [Id. at ¶¶ 9, 11.] Plaintiff acknowledges that: Mr. Pennington was from Reno, Nevada; he was not a Hawai`i resident; and he used

---

[2] Plaintiff filed her original Complaint in state court on March 20, 2014. The Trustee Defendants and Western Equities, LLC ("Western") the only defendants named in the original Complaint, removed the action April 11, 2014, based on diversity jurisdiction. [Notice of Removal at pgs. 4-5.] Plaintiff timely filed the First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).

the Property as a vacation property.  [<u>Id.</u> at ¶¶ 6-7.]  However,
she alleges that Mr. Pennington and his wife "had the intention
to spend most of their time in Hawaii."  [<u>Id.</u> at ¶ 7.]

Plaintiff alleges that, during her "hiring meeting,"
Mr. Pennington "made an express contractual offer to the
Plaintiff, of life time employment and compensation (along with
other benefits), until her death or voluntary decision to
retire."  [<u>Id.</u> at ¶ 9.]  Mr. Pennington allegedly promised
Plaintiff that she would receive a monthly salary of $2,500 for
the rest of her life or "until her voluntary retirement."  [<u>Id.</u>
at ¶ 14.]  Plaintiff believed this to mean that, if Mr.
Pennington died, "she would receive EITHER a lump sum equivalent
to her yearly income until retirement age of sixty five (65) OR
an annuity of $2,500 for her life or until retirement."  [<u>Id.</u> at
¶ 19 (some emphases omitted).]  According to Plaintiff,
Mr. Pennington made "the specific promise: 'stick with me and I
will take care of you for life.'"  [<u>Id.</u> at ¶ 18.]  In addition,
because Mr. Pennington's wife was to inherit the Pennington
Residence after Mr. Pennington's death, Plaintiff expected to
continue her employment at the residence after Mr. Pennington's
death.  [<u>Id.</u> at ¶ 19.]

According to Plaintiff, Defendant Kent Green, who was
either Western's chief executive officer ("CEO") or chief
financial officer ("CFO") at the time, was present at the hiring

meeting and took notes memorializing "the statements and promises" that Mr. Pennington made to Plaintiff. [Id. at ¶ 9.] She asserts that she accepted the terms Mr. Pennington promised by shaking his hand, and the hands of the other persons present. She alleges that the promises he made were also made "by extension" by "those present representing the Pennington corporate interests." [Id. at ¶ 18.]

Plaintiff alleges that, during her employment at the Pennington Residence, Mr. Pennington reaffirmed his promises to her with statements like, "don't do anything to get fired and I will take care of you for life" and "don't worry, you are taken care of." [Id. at ¶ 20.] Plaintiff alleges that there were at least five other employees to whom Mr. Pennington made similar promises, two of whom continue to be employed by the Trustee Defendants. [Id. at ¶ 21.]

Mr. Pennington died on May 15, 2011. [Id. at ¶ 23.] The Pennington Residence was sold in March 2012, and Defendants terminated Plaintiff's employment at some point thereafter. Plaintiff states that Defendants did not provide her with a severance package and they refused, without cause, to provide her with an employment reference. [Id. at ¶ 25.] Plaintiff alleges that, as a result of Defendants' actions, she has been unable to secure other employment, has been unable to collect unemployment benefits, and suffered emotional distress. [Id.]

4

The First Amended Complaint alleges the following claims against all Defendants: breach of implied-in-fact contract ("Count I"); wrongful termination in violation of public policy ("Count II"); breach of the covenant of good faith and fair dealing ("Count III"); interference with prospective economic advantage ("Count IV"); "promissory fraud" ("Count V"); and promissory estoppel ("Count VI"). Plaintiff prays for: compensatory and/or consequential damages; specific performance of payment of the income and benefits she would have received until age sixty-five and the pension that she would have received upon retirement; $250,000 in damages for emotional distress; $5,625,500 in punitive or exemplary damages; attorneys' fees and costs; interest; and any other appropriate relief.

In the instant Motion, Defendants urge this Court to dismiss all of Plaintiff's claims with prejudice pursuant to Fed. Civ. P. 12(b)(6). In the alternative, Defendants argue that this Court should grant summary judgment in their favor as to all claims.

## DISCUSSION

## I. Choice of Law

This Court must first address Defendants' argument that Nevada law applies to Plaintiff's claims.

This Court has ruled that, at the time of removal, there was diversity jurisdiction over the instant case. [Order

Denying Pltf.'s Motion to Remand and Pltf.'s Motion to Strike Defs.' Opp. to Remand, filed 6/25/14 (dkt. no. 28) ("6/25/14 Order"), at 10.[3]] "A federal court sitting in diversity must apply the forum state's choice of law rules." Jorgensen v. Cassiday, 320 F.3d 906, 913 (9th Cir. 2003). The Hawai`i Supreme Court

> has "moved away from the traditional and rigid
> conflict-of-laws rules in favor of the modern
> trend towards a more flexible approach looking to
> the state with the most significant relationship
> to the parties and subject matter." Lewis v.
> Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365
> (1988) (citing Peters [v. Peters], [63 Haw. 653,
> 660, 634 P.2d 586, 591 (1981)]). This flexible
> approach places "[p]rimary emphasis . . . on
> deciding which state would have the strongest
> interest in seeing its laws applied to the
> particular case." Id. Hence, this court has said
> that the interests of the states and applicable
> public policy reasons should determine whether
> Hawai`i law or another state's law should apply.
> See Peters, 63 Haw. at 667-68, 634 P.2d at 595.
> "The preferred analysis, [then] in our opinion,
> would be an assessment of the interests and policy
> factors involved with a purpose of arriving at a
> desirable result in each situation." Id. at 664,
> 634 P.2d at 593.

Mikelson v. United Servs. Auto. Ass'n, 107 Hawai`i 192, 198, 111 P.3d 601, 607 (2005) (some alterations in Mikelson). Defendants argue that Nevada law applies because it "has the most significant relationship to the parties and subject matter here." [Mem. in Supp. of Motion at 10.]

---

[3] The 6/25/14 Order is also available at 2014 WL 2895467.

**A. Choice-of-Law Provision**

In addition, as part of the choice of law analysis, this Court will consider any choice-of-law provisions in the relevant trust documents. Hawai`i courts have recognized that, as a general rule, "a settlor's choice of law regarding trust administration is enforceable." In re Thomas H. Gentry Revocable Trust, Nos. 29727, 29728, 2013 WL 376083, at *9 & n.8 (Hawai`i Ct. App. Jan. 31, 2013) (citations omitted). Defendants have submitted the February 24, 2005 Restatement of "The William N. Pennington Separate Property Trust" ("Pennington Trust Restatement"), and the "Will of William N. Pennington," dated February 24, 2005 ("Pennington Will"). [Defs.' Submission of Trust Documents in Supp. of Motion, Decl. of David J. Morandi, Exhs. B, C.] The Pennington Will gives Mr. Pennington's entire estate to the Pennington Trust. [Pennington Will at 2.]

Defendants acknowledge that "[r]eferences to applicable state law in the [Pennington Trust Restatement] appear only in Article 11." [Defs.' Submission of Trust Documents at 2.] Article 11, titled Powers of Trustees, states:

> To carry out the purposes of any trust created under this instrument, the Trustees are vested with the following powers with respect to the trust estate and any part of it. The Trustees shall also enjoy all other powers now or hereafter conferred by law including, without limitation, all powers set forth in the trust and probate laws of the State of Nevada. All of the Trustees' powers are exercisable only in a fiduciary capacity.

7

[Pennington Trust Restatement at 9.]  This Court finds that Article 11 only designates Nevada law as the applicable law for the determination of the Trustees' powers; it does not designate Nevada law as the law applicable to claims against the Trust. This Court therefore concludes that there is no choice-of-law provision that applies to Plaintiff's claims.  This Court will determine which state's law applies based on the "most significant relationship" analysis.

     **B.**  **Most Significant Relationship**

     Hawai`i and Nevada each has a significant relationship to the parties.  Plaintiff is a Hawai`i resident.  [First Amended Complaint at ¶ 1.]  The Pennington Trust "is domiciled in the State of Nevada and the Trust estate is being administered in the State of Nevada."  [Motion, Decl. of Andrew A. Lautenbach, Exh. A (Decl. of David J. Morandi) at ¶ 3.[4]]  Plaintiff acknowledges that: the Trustee Defendants' "principal place of business for meeting and conducting the affairs of Mr. Pennington's estate" is Reno, Nevada; and Western "is a Nevada corporation with its head office located in Reno, Nevada."  [First Amended Complaint at ¶¶ 2-3.]

---

     [4] The Trustee Defendants and Western originally filed Mr. Morandi's declaration with their motion to dismiss the original Complaint, which they filed on April 17, 2014.  [Dkt. no. 5.]  On July 24, 2014, this Court issued an EO deeming that motion moot in light of the filing of Plaintiff's First Amended Complaint.  [Dkt. no. 40.]

Defendants argue that "Nevada trust law also has the most significant relationship to the subject matter here, which is [the] administration of a Nevada trust." [Mem. in Supp. of Motion at 10.] This Court disagrees. The instant case arises from Plaintiff's employment at the Pennington Residence. Plaintiff alleges that she entered into an agreement with Mr. Pennington, and others, regarding her employment. The alleged agreement was formed in Hawai`i, and Plaintiff's employment apparently occurred exclusively in Hawai`i. The fact that Plaintiff seeks damages from, *inter alia*, a trust is incidental. Thus, although this Court agrees with Defendants that Nevada has a significant interest in "efficient and timely adjudication of claims against trusts," [Mem. in Supp. of Motion at 12,] Hawai`i has a significant interest in protecting the rights of employees in Hawai`i and enforcing contracts formed in Hawai`i. Insofar as the crux of the action involves employment and contract issues, this Court finds that Hawai`i has the most significant relationship with the subject matter of this case. This Court therefore CONCLUDES that Hawai`i law applies.

## II.  Whether the Motion Must Be Converted into A Motion for Summary Judgment

Defendants' Motion seeks dismissal of this action or, in the alternative, summary judgment. As a general rule, when a district court considers a motion to dismiss, its review is limited to the allegations in the complaint. Daniels-Hall v.

<u>Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010).  "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  <u>Id.</u> (citations and internal quotation marks omitted).  If the district court considers exhibits that do not meet these requirements, it must convert the motion to dismiss into a motion for summary judgment.  <u>Yamalov v. Bank of Am. Corp.</u>, CV. No. 10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7 (D. Hawai`i May 16, 2011) (citing <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 n.4 (9th Cir. 1998)).[5]

In ruling on the choice-of-law issue, this Court considered the Pennington Trust Restatement and the Pennington Will.  This Court finds that those documents can be considered without converting the Motion into a Motion for Summary Judgment. Plaintiff has sued Banis, Carano, Scarpello, and Mackall in their capacities as "the representatives/executors/trustees of William Pennington/the Estate of William Pennington."  [First Amended Complaint at ¶ 2.]  She also alleges that: they, "as Trustees of the Pennington Trust exercised complete control of Mr. Pennington's estate[;]" and she expected that, after

_____

   [5] <u>Parrino</u> was superseded by statute on other grounds, as stated in <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam).

Mr. Pennington's death, they "would carry out and honor Mr. Pennington's contractual obligations/promises."  [Id. at ¶¶ 22, 24 (emphasis omitted).]  Further, Plaintiff alleges that, because the Trustee Defendants will earn a percentage of Mr. Pennington's estate, they had an incentive to increase their shares by selling his assets and terminating his staff, including Plaintiff.  [Id. at ¶ 27.]  This Court therefore finds that the First Amended Complaint refers to, and relies upon, the Pennington Trust Restatement and the Pennington Will.  Further, Plaintiff has not contested the authenticity of the copies of those documents that Defendants submitted.

This Court also cited to David Morandi's declaration for the fact that the Pennington Trust is domiciled in, and is being administered in, Nevada.  Although the declaration is not the type of document described in Daniels-Hall, the citation to the declaration does not require conversion of the Motion to a motion for summary judgment because similar information is available in the trust documents.  For example, the cover sheet of the Pennington Will states that it was filed in the Second Judicial District Court of the State of Nevada.

This Court therefore DECLINES to convert the instant Motion into a motion for summary judgment.  This Court will rule upon Defendants' arguments based on the standards applicable to a motion to dismiss.

## III. __Limitations Period for Claims Against the Estate__

Defendants argue that Plaintiff's claims are barred because she failed to bring them within ninety days after publication of notice to trust creditors. [Id. at 14 (citing Nev. Rev. Stat. § 164.025(3)).] This Court will address Defendants' argument based upon the corresponding statute in Hawaii's Uniform Probate Code. Haw. Rev. Stat. § 560:3-803 states, in pertinent part:

> (a) All claims against either a decedent or a decedent's estate which arose before the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by another statute of limitations or non-claim statute, are barred against the estate, the personal representative, the decedent's trustee and the heirs and devisees of the decedent, unless presented within the earlier of the following:
>
> . . . .
>
> (2) Within eighteen months after the decedent's death, if notice to creditors has not been published as provided in section 560:3-801(a) or delivered as provided in section 560:3-801(b).
>
> . . . .
>
> (c) All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, the decedent's trustee, and the heirs and devisees of the decedent, unless presented as follows:

12

> (1) A claim based on a contract with the
> personal representative or trustee, within
> four months after performance by the personal
> representative or trustee is due; or
>
> (2) Any other claim, within the later of four
> months after it arises, or the time specified
> in subsection (a)(2).

Plaintiff's claim against Mr. Pennington's estate did not arise until after his death because it was not until approximately ten months after his death that she was terminated without the benefits that she was allegedly promised.  Thus, pursuant to § 560:3-803(c)(2), she was required to present her claim within the latter of four months after it arose or within eighteen months after Mr. Pennington's death, if proper notice was not provided.

Mr. Pennington died on May 15, 2011.  [First Amended Complaint at ¶ 23.]  Plaintiff's employment was terminated some time after the Pennington Residence was sold in March 2012.  [Id. at ¶ 25.]  Plaintiff alleges that:

> On or around May 1, 2012 Plaintiff formally
> reminded [the Trustee] Defendants of
> Mr. Pennington's implied-in-fact employment
> contract and promise . . . .  On or around
> June 26, 2012, Plaintiff made a demand on [the
> Trustee] Defendants for redress and to compensate
> the Plaintiff according to that contract in
> accordance with Mr. Pennington's wishes and
> expectations.

[Id. at ¶ 30.]  For purposes of the instant Motion, this Court accepts these factual allegations as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("for the purposes of a motion to

dismiss we must take all of the factual allegations in the complaint as true" (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555, 127 S. Ct. 1955 (2007)).  Further, this Court must construe the First Amended Complaint liberally because Plaintiff is proceeding pro se.  <u>See</u> <u>Allen v. Gold Country Casino</u>, 464 F.3d 1044, 1048 (9th Cir. 2006) (stating that the pro se plaintiff's pleadings "must be liberally construed" (citation omitted)).

Although it is a close question, this Court finds that Plaintiff's allegations are sufficient to raise a plausible argument that she timely presented her claims against the Trustee Defendants.  <u>Cf.</u> <u>Iqbal</u>, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570, 127 S. Ct. 1955 (2007)).  The issue of whether Plaintiff properly presented her claims against Mr. Pennington's estate to the Trustee Defendants involves a factual inquiry that is not appropriate in the context of a motion to dismiss.  This Court therefore DENIES Defendants' Motion as to their argument that Plaintiff failed to present her claims against Mr. Pennington's estate in a timely manner.

**IV.  <u>Whether Plaintiff has Stated Plausible Claims</u>**

Defendants also argue that, even if Plaintiff's claims against the estate are not time barred, they fail to state a

claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P.

12(b)(6).

A.    <u>**Count I - Breach of Contract**</u>

Defendants argue that Count I, Plaintiff's breach of

implied-in-fact contract claim, is barred by the Statute of

Frauds, Haw. Rev. Stat. § 656-1(7).  Section 656-1 states, in

pertinent part:

> No action shall be brought and maintained in any
> of the following cases:
>
> . . .
>
> (7) To charge the estate of any deceased
> person upon any agreement which by its terms
> is not to be performed during the lifetime of
> the promisor . . .
>
> . . .
>
> unless the promise, contract, or agreement, upon
> which the action is brought, or some memorandum or
> note thereof, is in writing, and is signed by the
> party to be charged therewith, or by some person
> thereunto by the party in writing lawfully
> authorized. . . .

First, this Court notes that, in addition to the

Trustee Defendants, Plaintiff alleges all of her claims against

Green, Bridgewater, WNP Enterprises, Inc. ("WNP"),[6] and Western.

In particular, Plaintiff's First Amended Complaint alleges that

---

[6] WNP appears to refer to William N. Pennington Enterprises.
<u>See</u> First Amended Complaint, Exh. 6 (facsimile transmittal sheet
on "William N. Pennington Enterprises" letterhead).

Western and WNP were also her employers.[7]  [First Amended

Complaint at ¶ 3 (alleging that: Plaintiff received her paychecks

from Western and WNP; the Pennington Residence was owned by

Western; and there is "a unity of interest and ownership" in her

employer and her indirect employer), ¶ 9 (alleging that Green, in

his capacity as Western's CEO or CFO, was present at her hiring

meeting), ¶ 18 (alleging that the promises that Mr. Pennington

made were also made on behalf of his corporate interests that

were represented at the meeting).]  Defendants' argument

regarding § 656-1(7) does not apply to Plaintiff's breach of

contract claim against Green, WNP, and Western.

Further, Hawai`i courts recognize that:

a trial court may relieve a party, who has relied
on an oral agreement, of the "hardships of the
Statute of Frauds" under certain circumstances:

(1) A promise which the promisor should
reasonably expect to induce action or
forbearance on the part of the promisee or a
third person and which does induce the action
or forbearance is enforceable notwithstanding
the Statute of Frauds if injustice can be
avoided only by enforcement of the promise.
The remedy granted for breach is to be
limited as justice requires.

(2) In determining whether injustice can be

---

[7] This Court does not construe Plaintiff's First Amended
Complaint as alleging that Mr. Pennington was her employer, but
that this Court should pierce the corporate veil to hold Western
and WNP liable for his obligations.  This Court therefore will
not address Defendants' argument that Plaintiff has not pled
sufficient allegations "to pursue a claim of alter ego or veil
piercing."  [Mem. in Supp. of Motion at 28.]

16

> avoided only by enforcement of the promise,
> the following circumstances are significant:
> (a) the availability and adequacy of other
> remedies, particularly cancellation and
> restitution; (b) the definite and substantial
> character of the action or forbearance in
> relation to the remedy sought; (c) the extent
> to which the action or forbearance
> corroborates evidence of the making and terms
> of the promise, or the making and terms are
> otherwise established by clear and convincing
> evidence; (d) the reasonableness of the
> action or forbearance; (e) the extent to
> which the action or forbearance was
> forseeable [sic] by the promisor.
>
> Mcintosh v. Murphy, 52 Haw. 29, 36, 469 P.2d 177,
> 181 (1970).

Morioka v. Lee, No. CAAP-13-0001761, 2014 WL 4251236, at *11-12

(Hawai`i Ct. App. Aug. 27, 2014).  This Court finds that the

factual allegations in the First Amended Complaint are sufficient

to support a plausible argument that this Court should grant

Plaintiff relief from the operation of the Statute of Frauds.

This Court therefore DENIES Defendants' Motion as to their

argument that Count I is barred by the Statute of Frauds.

   B.   **Count II - _Parnar_ Claim**

        Count II apparently alleges a claim pursuant to Parnar

v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625 (1982),

which established a "public policy exception" to the at-will

employment doctrine.  This Court has stated that, in Parnar,

> the Hawai`i Supreme Court adopted a common law
> tort, whereby an individual may bring a claim
> against an employer if her discharge directly
> violates clear public policy.  The court
> explained,

> Because the courts are a proper forum for
> modification of the judicially created
> at-will doctrine, it is appropriate that we
> correct inequities resulting from harsh
> application of the doctrine by recognizing
> its inapplicability in a narrow class of
> cases.  The public policy exception discussed
> herein represents wise and progressive social
> policy which both addresses the need for
> greater job security and preserves to the
> employer sufficient latitude to maintain
> profitable and efficient business operations.
> We therefore hold that an employer may be
> held liable in tort where his discharge of an
> employee violates a clear mandate of public
> policy.  In determining whether a clear
> mandate of public policy is violated, courts
> should inquire whether the employer's conduct
> contravenes the letter or purpose of a
> constitutional, statutory, or regulatory
> provision or scheme.  Prior judicial
> decisions may also establish the relevant
> public policy.  However, courts should
> proceed cautiously if called upon to declare
> public policy absent some prior legislative
> or judicial expression on the subject.  Of
> course, the plaintiff alleging a retaliatory
> discharge bears the burden of proving that
> the discharge violates a clear mandate of
> public policy.

[Parnar, 65 Haw.] at 379–80, 652 P.2d at 631
(footnotes omitted).  "Parnar claims can only be
maintained in a 'narrow class of cases' where the
judicially created wrongful discharge action is
needed to effectuate the public policy at stake."
Cambron v. Starwood Vacation Ownership, Inc., 945
F. Supp. 2d 1133, 1141–42 (D. Hawai`i 2013)
(citing Ross v. Stouffer Hotel Co., 76 Hawai`i
454, 879 P.2d 1037, 1047 (1994)).

Ritchie v. Hawai`i, Civil No. 14-00046 LEK-BMK, 2014 WL 4905336,

at *9-10 (D. Hawai`i Sept. 30, 2014).

The only public policy allegations in Count II are:

"[t]here is a public interest in maintaining the proper balance

18

between the employer's interest in running its business as it sees fit and the employee's interest in retaining employment[;]" and Defendants terminated Plaintiff's employment because it was against their "own best interests to continue to pay Plaintiff in accordance with the employment contact," and this violated public policy. [First Amended Complaint at ¶¶ 36-37.] Plaintiff's allegations do not rise to the level of "a clear mandate of public policy," which Defendants violated when they terminated her. This Court therefore concludes that Count II, Plaintiff's Parnar claim, "fails to state a claim upon which relief can be granted[.]" See Fed. R. Civ. P. 12(b)(6).

The Ninth Circuit has recognized that, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir.1995) (citations omitted). This Court finds that it is arguably possible for Plaintiff to cure the defect in this claim by amendment. This Court GRANTS Defendants' Motion insofar as Count II is DISMISSED WITHOUT PREJUDICE.

### C.   Count III - Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that Count III fails because there is no enforceable contract, and there is no independent tort claim or contract claim for breach of the covenant of good faith and

fair dealing.

Under Hawai`i law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 123-24, 920 P.2d 334, 337-38 (1996) (citations omitted). This district court has noted that the tort of bad faith breach of the covenant of good faith and fair dealing "has not been recognized in Hawai`i outside of the insurance context." Sunday's Child, LLC v. Irongate Azrep BW LLC, Civil No. 13-00502 DKW-RLP, 2014 WL 688582, at *5 n.5 (D. Hawai`i Feb. 4, 2014) (some citations omitted) (citing Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Hawai`i 122, 129, 157 P.3d 561, 568 (App. 2007)). Count III is therefore DISMISSED to the extent that it attempts to allege a tort claim. The dismissal is WITH PREJUDICE because this Court finds that it is not possible for Plaintiff to cure the defects in the tort claim by amendment.

This Court, however, finds that the allegations of the First Amended Complaint as a whole are sufficient to state a plausible breach of contract claim based on the alleged breach of the covenant of good faith and fair dealing. This Court therefore DENIES Defendants' Motion as to the breach of contract claim in Count III.

D.     **Count IV - Interference with Economic Advantage**

Count IV merely recites the elements of a claim for interference with prospective economic advantage and repeats the same factual allegations as those supporting Plaintiff's breach of contract claim.  First, a plaintiff's claim will not survive a motion to dismiss if it merely "recite[s] the formulaic elements of a cause of action."  E.E.O.C. v. Global Horizons, Inc., 904 F. Supp. 2d 1074, 1083 (D. Hawai`i 2012) (some citations omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556–57, 127 S. Ct. 1955 (2007)).

Second, Plaintiff cannot rely solely upon the alleged breach of contract to support Count IV.  This district court has explained that,

> if a court were to conclude that a breach of contract could satisfy the improper interference element of the tort of tortious interference with a prospective business advantage under Hawai`i law, it would be tantamount to resurrecting the tort of tortious breach of contract, albeit it in certain limited circumstances.  Given that the Francis [v. Lee Enterprises, 89 Hawai`i 234, 971 P.2d 707 (1999),] court abolished the tort of tortious breach of contract, the Court predicts that, if presented with the question, the Hawai`i Supreme Court would hold that **a breach of contract, even if done for improper purposes, does not without more give rise to improper interference for purposes of a tortious interference with a prospective business advantage claim.**  See Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent [a] case raises issues of first impression [under Hawai`i law], [a] court, sitting in diversity, 'must use its best judgment to predict how the Hawaii Supreme Court would decide

[the] issue.'" (quoting <u>Helfand v. Gerson</u>, 105
                    F.3d 530, 537 (9th Cir. 1997))). . . .

<u>Kapunakea Partners v. Equilon Enters. LLC</u>, 679 F. Supp. 2d 1203,

1219 (D. Hawai`i 2009) (some alterations in <u>Kapunakea Partners</u>)

(emphasis added).  Insofar as Count IV does not allege any facts

beyond the alleged breach of contract, this Court finds that

Count IV fails to state a claim that is plausible on its face.

<u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for

the misconduct alleged." (citation omitted)).

          This Court, however, finds that it is arguably possible

for Plaintiff to cure the defects in Count IV by amendment.

Defendants' Motion is therefore GRANTED as to Count IV, insofar

as Count IV is DISMISSED WITHOUT PREJUDICE.

          **E.    Count V - Promissory Fraud**

          Although Plaintiff titled Count V "Promissory Fraud,"

she appears to be alleging fraudulent misrepresentation.  <u>See,</u>

<u>e.g.,</u> First Amended Complaint at ¶ 50 ("a promise to do something

necessarily implies the intention to perform; hence, where a

promise is made without such intention, there is an implied

misrepresentation of fact that may be actionable fraud").

          First, the Court notes that this district court has

stated:

                              22

Under Hawai`i law, the elements of a
fraudulent or intentional misrepresentation claim
are: "(1) false representations made by the
defendant; (2) with knowledge of their falsity (or
without knowledge of their truth or falsity);
(3) in contemplation of plaintiff's reliance upon
them; and (4) plaintiffs detrimental reliance."
Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122
Hawai`i 461, 482-483, 228 P.3d 341, 362-63 (Ct.
App. 2010) (citing Hawaii's Thousand Friends v.
Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301
(1989)). In order to support a finding of fraud,
the plaintiff must establish these elements by
clear and convincing evidence. See, e.g.,
Hawaii's Thousand Friends, 70 Haw. at 286, 768
P.2d at 1301 (citation omitted). Further,

> the false representation forming the basis of
> a fraud claim "must relate to a past or
> existing material fact and not the occurrence
> of a future event." Joy A. McElroy, M.D.,
> Inc. v. Maryl Group, Inc., 107 Hawai`i 423,
> 433, 114 P.3d 929, 939 (Ct. App. 2005)
> (citations and block quote format omitted)
> (emphasis in original). Further, even if the
> allegations satisfy the other elements of a
> fraud claim, "[f]raud cannot be predicated on
> statements which are promissory in their
> nature, or constitute expressions of
> intention, and an actionable representation
> cannot consist of mere broken promises,
> unfulfilled predictions or expectations, or
> erroneous conjectures as to future events[.]"
> Id. (citations and block quote format
> omitted) (emphasis in original). The
> exception to this general rule is that "[a]
> promise relating to future action or conduct
> will be actionable, however, if the promise
> was made without the present intent to
> fulfill the promise." Id. (citations and
> block quote format omitted) (emphasis in
> McElroy).

Molina v. OneWest Bank, FSH, 903 F. Supp. 2d 1008, 1019-20 (D.

Hawai`i 2012) (alterations in Molina) (some citations omitted).

Thus, Plaintiff can allege a fraud claim based on representations

that a defendant made about future actions where there defendant allegedly had no intention of fulfilling the promise.

In addition, this Court must review Count V under the following standard to determine whether Plaintiff has sufficiently pled a fraud claim:

> [Fed. R. Civ. P.] 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Pursuant to Rule 9(b), a party is required to make particularized allegations of the circumstances constituting fraud. See Sanford v. MemberWorks, Inc., 625 F.3d 550, 557–58 (9th Cir. 2010).

> In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind—or scienter—of the defendants may be alleged generally." (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

> When there are multiple defendants,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple

> defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.
>
> Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (alterations in Swartz) (internal quotation marks and citations omitted); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve multiple defendants, the complaint must satisfy Rule 9(b) particularity requirements for each defendant." (citations omitted)).

Barker v. Gottlieb, 23 F. Supp. 3d 1152, 1164-65 (D. Hawai`i 2014) (alterations in Barker) (some citations omitted). Plaintiff has not pled her fraud claim with sufficient particularity to meet these standards. Plaintiff has not identified the specific fraudulent misrepresentations that her claim is based upon, who made them, and the time and place where they were made. Further, as to each defendant named in the fraud claim, Plaintiff must at least identify that defendant's role in the alleged fraud.

This Court therefore concludes that Count V fails to state a claim upon which relief can be granted. This Court, however, finds that it is arguably possible for Plaintiff to cure the defects in Count V by amendment. Defendants' Motion is GRANTED, insofar as Count V is DISMISSED WITHOUT PREJUDICE.

### F. Count VI - Promissory Estoppel

The Hawai`i Supreme Court has stated:

> Generally, a claim for promissory estoppel may arise as an application of the general principle of equitable estoppel to certain

situations where a promise has been made,
even though without consideration, if it was
intended that the promise be relied upon and
was in fact relied upon, and a refusal to
enforce it would be virtually to sanction the
perpetration of fraud or result in other
injustice.

In re Herrick, 82 Hawai`i 329, 337, 922 P.2d 942,
950 (1996) (quotation omitted). . . .  [T]he four
elements of promissory estoppel are:

(1) There must be a promise;

(2) The promisor must, at the time he or she
made the promise, foresee that the promisee
would rely upon the promise (foreseeability);

(3) The promisee does in fact rely upon the
promisor's promise; and

(4) Enforcement of the promise is necessary
to avoid injustice.

In re Herrick, 82 Hawai`i at 337-38, 922 P.2d at
950-51 (quoting 4 R. Lord, A Treatise on the Law
of Contracts by Samuel Williston § 8:5, at 85-95
(4th ed. 1992)).  The "essence" of promissory
estoppel is "detrimental reliance on a promise."
Ravelo [by Ravelo v. Cnty. of Hawaii], 66 Haw.
[194,] 199, 658 P.2d [883,] 887 [(1983)].

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Hawai`i 149,

164-65, 58 P.3d 1196, 1211-12 (2002) (footnote omitted).

"[A] 'promise' for purposes of promissory estoppel [is]

a manifestation of intention to act or refrain from acting in a

specified way, so made as to justify a promisee in understanding

that a commitment has been made."  Id. at 165, 58 P.3d at 1212

(citations and internal quotation marks omitted).  The First

Amended Complaint does not contain sufficient allegations of

either a promise by Defendants or how Plaintiff detrimentally relied on that promise. This Court therefore concludes that Plaintiff has failed to allege a plausible promissory estoppel claim. This Court, however, finds that it is arguably possible for Plaintiff to cure the defects in Count VI by amendment. Defendants' Motion is GRANTED as to Count VI, insofar as Count VI is DISMISSED WITHOUT PREJUDICE.

### G. **Defendant Bridgewater**

Although Count I and the portion of Count III alleging a contract claim survive Defendants' Motion, this Court finds that the allegations in the First Amended Complaint are insufficient to state a claim against Bridgewater. Bridgewater's only role in the relevant events appears to be that she sent Plaintiff a background check form that the Trustee Defendants wanted all employees to fill out. See First Amended Complaint at ¶ 22 (alleging that, in August 2008 - when the Trustee Defendants had Mr. Pennington declared incompetent and assumed control of his estate - the Trustee Defendants performed a criminal background check and credit check on Plaintiff), Exh. 6 (facsimile transmittal dated 8/7/08 from "Racquel" asking "Roni" whether she received the background check form). She also notarized the Pennington Trust Restatement and the Pennington Will, [Pennington Trust Restatement at 14; Pennington Will at 7,] but that is not relevant to Plaintiff's claims.

This Court finds that it is arguably possible for Plaintiff to cure the defects in her claims against Bridgewater. The Court therefore GRANTS Defendants' Motion as to Count I and the remaining portion of Count III against Bridgewater and DISMISSES those claims WITHOUT PREJUDICE.

## IV.   Leave to Amend

This Court has dismissed the following claims without prejudice: Count I against Bridgewater; the portion of Count III against Bridgewater alleging a contract claim for the breach of the covenant of good faith and fair dealing; and Counts II, IV, V, and VI against all Defendants.  If Plaintiff wishes to amend these claims, she must file a second amended complaint by **March 2, 2015.**  This Court CAUTIONS Plaintiff that, if she fails to file her second amended complaint by **March 2, 2015,** or if the second amended complaint fails to cure the defects in her claims that this Court has identified in this Order, this Court will dismiss those claims with prejudice, and only the remaining portions of Counts I and III will proceed in this case.

This Court emphasizes that it has only granted Plaintiff leave to amend the claims listed in this section.  If Plaintiff wishes to make other changes — *i.e.*, if she wishes to add new parties, claims, or theories of liability — Plaintiff must file a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss First Amended Complaint [Doc. 38], filed August 4, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.  Defendants' Motion is GRANTED insofar as:

-Count I is DISMISSED WITHOUT PREJUDICE as to Defendant Racquel
    Bridgewater;

-the portion of Count III alleging a tort claim for bad faith is
    DISMISSED WITH PREJUDICE as to all Defendants;

-the portion of Count III alleging a contract claim against
    Bridgewater for breach of the covenant of good faith and
    fair dealing is DISMISSED WITHOUT PREJUDICE; and

-Counts II, IV, V, and VI are DISMISSED WITHOUT PREJUDICE as to
    all Defendants.

Defendants' Motion is DENIED in all other respects.

Plaintiff has until **March 2, 2015** to file her second amended complaint, consistent with the terms described in this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 30, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RONI DU PREEZ VS. RICK BANIS, ET AL**; CIVIL 14-00171 LEK-RLP;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED COMPLAINT [DOC.38]