IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RONI DU PREEZ,                    )    CIVIL NO. 14-00171 LEK-RLP
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
RICK BANIS, DON CARANO, FRED      )
SCARPELLO, JOHN MACKALL, ET       )
AL.,                              )
                                  )
          Defendants.             )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS**

On May 19, 2015, Defendants Rick Banis, Don Carano,
Fred Scarpello, John Mackall, and Representatives/Executors/
Trustees of William Pennington (collectively, "Trustee
Defendants"), Kent Green ("Green"), Racquel Bridgewater
("Bridgewater"), WNP Enterprises, Inc. ("WNP"), and Western
Equities LLC ("Western," and all collectively, "Defendants")
filed their Motion to Dismiss the Third Amended Complaint for
Damages and Equitable Relief ("Motion to Dismiss"), and, on
June 26, 2015, they filed their Motion for Summary Judgment.
[Dkt. nos. 137, 148.]

Plaintiff Roni Du Preez ("Plaintiff") filed her
memorandum in opposition to the Motion to Dismiss ("Dismissal
Opposition") on June 1, 2015, and Defendants filed their reply
("Dismissal Reply") on July 13, 2015.  [Dkt. nos. 143, 151.]

Plaintiff filed a surreply ("Dismissal Surreply") on July 23, 2015.  [Dkt. no. 152.]

Plaintiff filed her memorandum in opposition to the Motion for Summary Judgment ("Summary Judgment Opposition") on August 19, 2015, and Defendants filed their reply ("Summary Judgment Reply") on August 31, 2015.  [Dkt. nos. 163, 176.] Plaintiff filed a surreply ("Summary Judgment Surreply") on September 9, 2015.  [Dkt. no. 192.]

These matters came on for hearing on September 14, 2015.[1]  After careful consideration of the motions, supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, Defendants' Motion for Summary Judgment is HEREBY GRANTED as to Counts II, III, IV, V, and VII, and as to the portions of Counts I and VI against Green and Bridgewater. The Motion for Summary Judgment is HEREBY DENIED as to all other portions of Counts I and VI.

In light of the Court's ruling on the Motion for Summary Judgment, Defendants' Motion to Dismiss is HEREBY DENIED AS MOOT.

## <u>BACKGROUND</u>

The gravamen of this case is that Plaintiff seeks to enforce the promises that she alleges her former employer,

---

[1] Plaintiff filed all of her memoranda pro se, but, by the time of the hearing, she was represented by counsel.  <u>See</u> Appearance of Counsel, filed 9/11/15 (dkt. no. 195).

William Pennington ("Pennington"), made to her before she
accepted the position as the manager of his vacation home in
Wailea, on the Island of Maui ("the Property") and during the
course of her employment.  The relevant procedural background of
this case is set forth in this Court's January 30, 2015 order
addressing Defendants' motion to dismiss a prior version of the
complaint ("1/30/15 Order").  [Dkt. no. 74.[2]]  This Court will
therefore only address the events that occurred after the filing
of the 1/30/15 Order.

On March 2, 2015, Plaintiff filed her Second Amended
Complaint for Damages and Equitable Relief ("Second Amended
Complaint.").  [Dkt. no. 92.]  On April 27, 2015, the magistrate
judge granted Plaintiff's motion for leave to file a third
amended complaint, [dkt. no. 125,] and Plaintiff timely filed her
Third Amended Complaint for Damages and Equitable Relief ("Third
Amended Complaint") on May 5, 2015 [dkt. no. 130].

The Third Amended Complaint alleges the following
claims against all Defendants, except where specified: breach of
implied contract ("Count I"); wrongful termination ("Count II");
breach of the covenant of good faith and fair dealing
("Count III"); interference with prospective economic advantage

---

[2] The 1/30/15 Order is also available at 2015 WL 415890.  It
addressed Plaintiff's First Amended Complaint for Damages and
Equitable Relief ("First Amended Complaint").  [Filed 7/21/14
(dkt. no. 38).]

against Green ("Count IV"); fraudulent misrepresentation ("Count V"); promissory estoppel ("Count VI"); and breach of oral contract ("Count VII").  Plaintiff prays for judgment in her favor as to all counts and the following relief: compensatory and/or consequential damages in the amount of $2,500 per month "for the duration of her life or reasonable date of retirement"; an award of "lost income and benefits for the remainder of her work life until reasonable retirement age"; an award of "an amount equivalent to the pension she would have received upon retirement"; $250,000 in damages for emotional distress; punitive or exemplary damages; reasonable attorneys' fees and costs; and any other appropriate relief.  [Third Amended Complaint at pgs. 37-38.]

In the Motion to Dismiss, Defendants argue that this Court should dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) because each one fails to state a claim upon which relief can be granted.  To the extent that any of Plaintiff's claims survive dismissal, Defendants argue that this Court should dismiss them as to Bridgewater because the Third Amended Complaint does not allege sufficient facts to support Plaintiff's claims against her.  In the Motion for Summary Judgment, Defendants argue that Plaintiff has not identified any genuine issue of material fact, and therefore they are entitled to judgment as a matter of law as to any claim that survives the

Motion to Dismiss.

## DISCUSSION

I. **Procedural Issues**

A. **Judicial Notice**

On September 10, 2015, Defendants filed their Request for Judicial Notice in Support of Motion for Summary Judgment ("Request"). [Dkt. no. 194.] Defendants ask this Court to take judicial notice of the following:

> [R]ather than producing **any** records or testimony that might support Plaintiff's conclusory assertions [regarding the manager that she hired for the businesses that she previously ran with her husband and the opportunity to start a business in 2008 that she forwent], Plaintiff and her husband have (1) filed objections and motions to quash Defendants' subpoenas [see Dkt. Nos. 177, 178, 179, 180, 181, and 182], and (2) filed a new complaint against Defendants' counsel and the process server in the Circuit Court of the Second Circuit, State of Hawaii, asserting that Defendants' efforts to obtain such discovery amounts to an abuse of process.

[Request at 2 (emphasis and second set of brackets in original).] The complaint in the state court case is attached to the Request as Exhibit 1.

This Court is required to grant the Request if it addresses facts that are subject to judicial notice and Defendants provided the "necessary information." See Fed. R. Evid. 201(c)(2). A fact is subject to judicial notice if it "is not subject to reasonable dispute because it: (1) is generally

known within the trial court's territorial jurisdiction; or
(2) can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned." Rule 201(b).  This
Court FINDS that the filing of the documents referenced in the
Request is subject to judicial notice, and it GRANTS the REQUEST
as to the filing of those documents.

       This Court, however, FINDS that the documents are not
relevant to the issues currently before it.  If Defendants
contend that Plaintiff should be precluded from presenting
certain evidence at trial because of her failure to provide
requested discovery, Defendants must file the appropriate motion.

   **B.   Plaintiff's Surreplies**

       Plaintiff has requested leave to file a surreply in
opposition to the Motion to Dismiss.  [Dismissal Surreply at 2.]
Local Rule 7.4 states that, other than the memorandum in
opposition and the reply, "[n]o further or supplemental briefing
shall be submitted without leave of court."  Insofar as this
Order denies the Motion to Dismiss as moot, this Court also
DENIES AS MOOT Plaintiff's request for leave to file the
Dismissal Surreply.

       In the Summary Judgment Surreply, Plaintiff argues that
this Court should not consider Defendants' argument in the
Summary Judgment Reply that: "Any reasonable person would have
understood [the alleged promise] to be intended to suggest, at

most, that Mr. Pennington treats people well, and would be a good boss for so long as good services were provided." [Summary Judgment Surreply at ¶ 8 (quoting Summary Judgment Reply at 3-4).]  Plaintiff contends that Defendants improperly raised this argument for the first time in the Summary Judgment Reply.  [Id. at ¶ 9.]  Local Rule 7.4 states, in pertinent part, "[a]ny argument raised for the first time in the reply shall be disregarded."  The argument that Plaintiff cites from the Summary Judgment Reply is merely an extension of the issues that Defendants raised in the Motion for Summary Judgment.  See, e.g., Mem. in Supp. of Motion for Summary Judgment at 10 ("the sole statement on which Plaintiff relies - 'stick with me and I will take care of you for life' - is not sufficiently definite to be enforceable").  Thus, to the extent that Plaintiff asks this Court to strike or disregard the argument that she quotes from the Summary Judgment Reply, Plaintiff's request is DENIED.

This Court now turns to the merits of Defendants' Motion for Summary Judgment.

## II.  **Defendants' Motion for Summary Judgment**

Plaintiff worked as a personal assistant for the prior owner of the Property, John Cavanaugh ("Cavanaugh"), from approximately October 2002 until he sold the Property to Pennington in January 2005.  [Pltf.'s Decl. in Opp. to Defs.' Motion for Summary Judgment ("Pltf.'s Decl."), filed 8/19/15

(dkt. no. 166), at ¶¶ 6, 11, 58.[3]]  When Plaintiff worked for Cavanaugh, she was self-employed as an independent contractor. She set her own schedule and had the ability to decline work from him.  This allowed Plaintiff to divide her time between working for Cavanaugh and working with her husband on their own businesses.  [Id. at ¶¶ 8-9.]  Although Cavanaugh did not require Plaintiff to work with him exclusively, she relinquished all of her other clients.  [Id. at ¶¶ 7, 58.]

On or around January 19, 2005, Plaintiff interviewed with Pennington for the position of property manager for the Property.  [Id. at ¶ 13.]  Also present at the interview were Robin Langel, Pennington's live-in caretaker, and Green. According to Plaintiff, Green took notes during the meeting, but he has stated during discovery that he has no recollection of whether or not he took notes, and that he was unable to locate any notes regarding the interview.  [Id. at ¶¶ 20-21 & n.8 (citing Pltf.'s Decl., Exh. 10 (Def. Kent Green's Responses and Objections to Pltf.'s Request for Admissions) at Response to Request No. 3).]

At the interview, Plaintiff and Pennington discussed, *inter alia*, the job responsibilities, required hours, and

---

[3] Plaintiff submitted twenty one exhibits with her declaration.  Exhibit 19 to Plaintiff's Declaration, which itself includes Exhibits A through H, is filed separately from Plaintiff's Declaration as dkt. no. 164.

compensation.   The terms of the position included:

-working exclusively for Pennington;

-working full-time and being on call twenty-four hours a day,
     seven days a week, including holidays, when Pennington was
     staying at the Property;

-working more than forty hours per week when Pennington was
     staying at the residence and reducing her hours accordingly
     during weeks when he was not there;

-complying with a schedule set by the Head Housekeeper,
     Terri Langel, who Plaintiff would report to, and who would
     train Plaintiff and provide her with more detailed
     instructions.

[Id. at ¶¶ 26-26.d.]

     After Pennington informed Plaintiff of the job

requirements, he stated that she would be paid $2,500 per month.

Plaintiff did not accept the offer at that time.   Pennington

asked Plaintiff if she had any questions.   [Id. at ¶¶ 29-31.]

Plaintiff states:

     32.  I was concerned that the employment
     would be short-term, due to Mr. Pennington's
     advanced age and declining health, and discussed
     my reservations at the interview.

     33.  I asked, "How long have your employees
     been working for you?" in order to bring up the
     issue of job security.

     34.  Mr. Pennington understood what I was
     asking smiled and replied, "A long time".  A short
     discussion ensued in which various employees and
     their length of employment for Mr. Pennington
     and/or his corporations were mentioned.

     . . . .

     36.  Mr. Pennington made it known we would be
     entering into a long term employment agreement by

saying "This is for the long term".

37.  Mr. Pennington also told me, during the negotiations, and prior to an agreement, "I want good people working for me.  With me, you will not have to worry about your future."

38.  Mr. Pennington then explicitly told me, **"Stick with me and I will take care of you for life."**

[Id. at pgs. 11-12 (emphasis added).]  After Pennington made that statement, Plaintiff verbally accepted the position, and shook hands with Pennington, Langel, and Green.  [Id. at ¶ 41.] Plaintiff believed the statement to be a promise of "compensation for life," and she would not have accepted the position without that promise, which was "an integral part of the contract."  [Id. at ¶¶ 47, 49.]  She states that the $2,500 monthly salary, "was less money than [she] was earning at the time, was without benefits, and was without agreeing to any raises or cost of living increases, which [she] had received while working for Mr. Cavanaugh."  [Id. at ¶ 49.]  Plaintiff states that Pennington hired another former Cavanaugh employee in January 2005 to work at the Property and perform similar duties to Plaintiff.  That person was paid $6,000 per month.  [Id. at pg. 15 n.12 (citing Pltf.'s Decl., Exh. 13 at WNP00362-64 (check records from Western Equities, LLC to Cathy Hetzel for $3,000.00 for "Contract Labor" for three bi-monthly periods in 2005)).]

Plaintiff believed Pennington's statement and that he had the financial ability to honor it.  From her prior employment

10

with Cavanaugh, Plaintiff knew that Pennington purchased the Property for $9.2 million in cash and that Pennington "agreed to purchase the furniture and cars that were in the [Property] via handshake." [Id. at ¶¶ 44-46 & n.11 (citing Pltf.'s Decl., Exh. 12 (fax dated 1/7/05 to "Racquel Bridgewater" from Cathy A. Hetzel for John E. Cavanaugh)).]

According to Plaintiff, during her employment, Pennington reaffirmed his promise of lifetime compensation:

> 56. Mr. Pennington also told me, when him, myself and Mr. Langel were discussing an employee that had been fired, "don't do anything to get fired and I will take care of you for life."

> 57. When I expressed fear that I would lose him and my job, I was told, "That's not going to happen. Don't worry you are taken care of."

[Id. at pg. 17.]

Plaintiff was employed at the Property for over seven years. [Defs.' Concise Statement of Facts in Supp. of Motion for Summary Judgment ("Defs.' CSOF"), filed 6/26/15 (dkt. no. 149), at ¶ 25; Pltf.'s Separate Concise Statement of Facts in Opp. to Motion for Summary Judgment ("Pltf.'s CSOF"), filed 8/19/15 (dkt. no. 165), at ¶ 25 (stating that Defendants' paragraph 25 is undisputed).[4]] During that time, Plaintiff "did not receive a raise, or any benefits, as [she] had been promised lifetime

---

[4] In addition to the exhibits attached to Plaintiff's Declaration and the Summary Judgment Opposition, there are eleven exhibits attached to Plaintiff's CSOF.

compensation." [Pltf.'s Decl. at ¶ 53.] Throughout her employment, Plaintiff was paid with checks from either Western or WNP Enterprises Inc. [Id. at ¶ 55 (citing Pltf.'s Decl., Exh. 14 (sample check records)).] The check records have corresponding invoice numbers. However, Plaintiff states that she never provided an invoice, as an independent contractor would. [Id.; Defs.' CSOF, Decl. of Andrew J. Lautenbach ("Lautenbach Decl."), Exh. A (trans. of videotaped depo. of Plaintiff on 6/4/15 ("Pltf.'s Depo.")) at 218 (acknowledging that the checks defense counsel showed her for payments to her in April 2012 state "Invoice Amount," but stating that she "never sent an invoice").]

According to Plaintiff, Defendants had Pennington declared incompetent around August 2008, and they took control of his affairs. Defendants conducted an evaluation of Plaintiff, which included a background check. Scarpello's law firm, Scarpello & Huss, Ltd., conducted the background check. Plaintiff cites a letter regarding the background check as evidence that she was an employee, not an independent contractor. [Id. at ¶ 68 (citing Pltf.'s Decl., Exh. 20 (letter dated 8/25/08 to Plaintiff from a Scarpello & Huss, Ltd. investigator stating, "[p]ursuant to your submitting an application for employment or an application for a background investigation for continued employment, a Credit Background report was obtained by Scarpello & Huss, Ltd.")).]

Pennington died in May 2011.  [Defs.' CSOF at ¶ 25; Pltf.'s CSOF at ¶ 25.]  Plaintiff's employment was terminated when Western sold the Property in March 2012.  [Pltf.'s Decl. at ¶ 62, Exh. 21 (collection of documents regarding the sale of the Property).]  After her termination, Plaintiff sent two letters to the Trustee Defendants reminding them of the terms of her employment with Pennington, but they did not respond.  [Id. at ¶¶ 72-73, Exhs. 8-9.]  Plaintiff states she performed all of the conditions required of her under her contract.  [Pltf.'s Decl. at ¶ 74.]

Defendants do not concede that Pennington made the statement: "Stick with me and I will take care of you for life." However, in considering a motion for summary judgment, "[a]ll evidence and inferences must be construed in the light most favorable to the nonmoving party."  Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, Civil No. 12-00486 SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015) (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). Defendants - and this Court - therefore assume, for purposes of the Motion for Summary Judgment, that Pennington made that statement.  Defendants argue that, even assuming that Pennington made the statement, Plaintiff's claims fail because "each require[s] Plaintiff to prove an actionable promise" and the statement "is too indefinite to be enforced under any theory."

13

[Mem. in Supp. of Motion for Summary Judgment at 2.]

A.   **Plaintiff's Contract Claims**

Counts I, III, VI, and VII are contract-based claims, and this Court will first address Defendants' argument that the statement "Stick with me and I will take care of you for life" is too indefinite to be enforceable in the context of contract claims.  This district court has stated:

> Hawaii law instructs that "[t]o be enforceable, a contract must be certain and definite as to its essential terms."  Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144 (1977) (citation omitted); see also Clarkin v. Reimann, 2 Haw. App. 618, 627, 638 P.2d 857 (1981).  An "essential term," however, is not merely a term that one of the parties views as "essential" to inducing his or her assent, . . . but rather a term integral to the contract itself, such as a price term specifying the monthly rent or a term indicating how rent should be calculated in a lease agreement, as was the case in Clarkin.  See Clarkin, 2 Haw. App. at 628, 638 P.2d 857.

Boskoff v. Yano, 217 F. Supp. 2d 1077, 1088 (D. Hawai`i 2001) (some alterations in Boskoff).[5]  Thus, an agreement "'is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose.'"  Constantino v. U.S. Bank, N.A., CV. No. 09-00066 DAE-RLP, 2011 WL 4435388, at *6 (D. Hawai`i Sept. 23, 2011) (quoting Assocs. Fin. Servs. Co. of Haw. v. Mijo, 950 P.2d 1219,

---

[5] This Court has ruled that there was diversity jurisdiction at the time of removal, and, as a court sitting in diversity, it applies state substantive law.  See 1/30/15 Order, 2015 WL 415890, at *2, 9.

1232 (Haw. 1998)).

Plaintiff has conceded that her belief that Pennington promised her lifetime compensation was based on the **context** of his statement – "Stick with me and I will take care of you for life." [Pltf.'s CSOF at ¶ 6 ("Ms. Du Preez understood from the context of the promise that she would get $2,500.00 a month until retirement age or death.  This was Mr. Pennington's intent as well, as evident from context.").]  She admits that she speculated whether she would be paid through a lump sum or an annuity.  [Id. at ¶ 5.]  She also admits that no one at her January 19, 2005 interview used the term "lump sum."  [Defs.' CSOF at ¶ 9; Pltf.'s CSOF at ¶ 9.]

Although the purported promise of lifetime compensation in some form was "essential" to Plaintiff in that she would not have accepted the position without it, it was a "detail[ that was] not essential to the proposal and [did] not change its terms or purpose."  See Boskoff, 217 F. Supp. 2d at 1088; Constantino, 2011 WL 4435388, at *6.  The "essential terms" for the formation of the contract included, for example, the duties of the position and the monthly salary.  Accord Clarkin, 2 Haw. App. at 628, 638 P.2d 857.  Thus, the fact that the details of the purported lifetime compensation were "not worked out" did not preclude the formation of a contract.  See Constantino, 2011 WL 4435388, at *6.

### 1.   <u>Count I - Breach of Implied Contract</u>

As to Count I, the issue is whether, having formed a contract regarding Plaintiff's services as the manager of the Property, Plaintiff and Pennington ever worked out the details of the purported promise of lifetime compensation.  Pennington's statement - "Stick with me and I will take care of you for life" - occurred in the context of other statements that he made, including: "This is for the long term"; and "With me, you will not have to worry about your future."  [Pltf.'s Decl. at ¶¶ 37-38.]  Further, during Plaintiff's employment, Pennington reiterated, "don't do anything to get fired and I will take care of you for life."  [<u>Id.</u> at ¶ 56.]  He made that statement when he, Plaintiff, and Robin Langel were having a conversation about another employee who had been fired.  [<u>Id.</u>]  When Plaintiff expressed her fear that she would lose her job when Pennington died, he told her: "That's not going to happen.  Don't worry you are taken care of."  [<u>Id.</u> at ¶ 57.]

The Hawai`i Supreme Court has stated:

> An implied contract, in the proper sense, is where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same, the services not being performed under such circumstances as to show that they were intended to be gratuitous, or where a person performs services for another on request.

<u>Kemp v. State of Hawai`i Child Support Enf't Agency</u>, 111 Hawai`i

16

367, 391, 141 P.3d 1014, 1038 (2006) (citations omitted).

This Court acknowledges that it is a close question whether Pennington's and Plaintiff's actions gave rise to an implied or presumed obligation that Plaintiff would receive lifetime compensation.  However, issues of Plaintiff's credibility are a critical component of that determination, and this Court cannot rule on credibility issues on a motion for summary judgment.  See, e.g., Kauhako v. State of Haw. Bd. of Educ. Dep't of Educ., Civil No. 13-00567 DKW-BMK, 2015 WL 5312359, at *7 (D. Hawai`i Sept. 9, 2015) (citing Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted))).

Viewing the record in the light most favorable to Plaintiff, this Court FINDS that she has responded to Defendants' Motion for Summary Judgment with sufficient evidence in support of her implied contract claim.  See Nauman v. Buqado, 374 F. Supp. 2d 893, 900 (D. Hawai`i 2005) ("Generally, when a plaintiff fails to respond to a motion for summary judgment with sufficient evidence to support his or her claims, that plaintiff has failed to meet its burden of showing the existence of a genuine issue of material fact, and therefore summary judgment will be granted to the defendant." (citing T.W. Elec. Service, 809 F.2d at 630)).

17

Further, this Court FINDS that there are genuine issues of material fact regarding whether Plaintiff and Pennington formed an implied contract that required Pennington to pay her lifetime compensation.  This Court CONCLUDES that Defendants are not entitled to judgment as a matter of law.[6]  See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

This Court therefore DENIES Defendants' Motion for Summary Judgment as to Count I.

### 2.   **Count VII - Breach of Oral Contract**

Defendants have argued that Counts I and VII are duplicative and that Plaintiff cannot proceed on both claims. However, Fed. R. Civ. P. 8(d)(2) allows a plaintiff to plead "2 or more statements of a claim . . . alternatively or

---

[6] In concluding that Defendants are not entitled to judgment as a matter of law as to Count I, this Court also rejects their argument that the claim is barred by the Statute of Frauds, Haw. Rev. Stat. § 656-1(7).  This Court has already addressed the Statute of Frauds issue in the 1/30/15 Order.  2015 WL 415890, at *6-7.  This Court denied Defendants' motion to dismiss the breach of implied contract claim in the First Amended Complaint because it found that the factual allegations were "sufficient to support a plausible argument that this Court should grant Plaintiff relief from the operation of the Statute of Frauds." Id. at *7. Based on the same reasoning, this Court now finds that there are genuine issues of material fact regarding relief from the Statute of Frauds, and it concludes that Defendants are not entitled to judgment as a matter of law on the Statute of Frauds issue.

18

hypothetically, either in a single count or . . . in separate ones." See also Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1103 (D. Hawai`i 2014) (stating that "Rule 8(d) allows a plaintiff to pled [sic] in the alternative").

"Under Hawai`i law, an oral contract must contain the following elements in order for it to be enforceable: (1) an offer, (2) an acceptance, and (3) consideration." Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc., 948 F. Supp. 2d 1131, 1144 (D. Hawai`i 2013) (citing Douglass v. Pflueger Hawaii, Inc., 110 Hawai`i 520, 525, 135 P.3d 129 (2006)).  Although Plaintiff has presented evidence that she formed an oral contract with Pennington to employ her as the manager of the Property, she has not presented any evidence that there was an oral offer and acceptance regarding the alleged lifetime compensation.  As noted *supra* Section II.A.1, Plaintiff has conceded that, at the January 19, 2005 interview, she based her belief that she was entitled to lifetime compensation on the **context** of Pennington's statements, not on the express promise of such a benefit. Plaintiff has also conceded that, during her employment, she and Pennington never had a conversation in which he used the term "lump sum" in connection with her employment.  [Defs.' CSOF at ¶ 10; Pltf.'s CSOF at ¶ 10.]

This Court therefore FINDS that Plaintiff has failed to respond to Defendants' Motion for Summary Judgment with

sufficient evidence to support her claim for breach of oral contract.  Thus, she has failed to establish a genuine issue of material fact as to that claim, and Defendants are entitled to judgment as a matter of law.  See Nauman, 374 F. Supp. 2d at 900.  This Court GRANTS Defendants' Motion for Summary Judgment as to Count VII.

### 3.    Count III - Breach of the Covenant of Good Faith and Fair Dealing

As this Court noted in the 1/30/15 Order, "[u]nder Hawai`i law, 'every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.'"  2015 WL 415890, at *9 (quoting Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 123-24, 920 P.2d 334, 337-38 (1996)).  "Good faith performance 'emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"  Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (1985) (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)).

This district court, however, has observed that the Hawai`i courts have never held that a cause of action for breach of the covenant of good faith and fair dealing exists in every type of contract and with every type of breach.  This district court has stated:

20

> Hawai`i courts have not recognized a separate tort cause of action for bad faith or breach of the duty of good faith and fair dealing based upon any type of contract in any circumstances.  Moreover, in Francis v. Lee Enterprises, Inc., 89 Hawai`i 234, 971 P.2d 707, 711–12 (1999), the Hawai`i Supreme Court stressed the importance that claims of bad faith be limited to "the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." The Hawai`i Supreme Court stated that the limitation on the tort of bad faith was important due to the fact that recovery in tort was very different from contractual remedies.  Id. at 712–13.  Accordingly, the Hawai`i Supreme Court stated that Hawai`i law will not allow a recovery in tort "in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract."  Id. at 717.

Sung v. Hamilton, 710 F. Supp. 2d 1036, 1050 (D. Hawai`i 2010).

Thus, in the instant case, in order to survive summary judgment on Count III, Plaintiff must present sufficient evidence to raise a genuine issue of material fact as to Defendants' conduct beyond the alleged breach of implied contract.  In responding to Defendants' Motion for Summary Judgment, Plaintiff cannot rely on the allegations of the Third Amended Complaint, and she "must set forth specific facts showing that there is a genuine issue for trial."  See Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Plaintiff has not presented sufficient evidence of conduct - beyond the alleged breach of the implied contract -

21

that breached the covenant of good faith and fair dealing.
Instead, Plaintiff appears to rely on the same conduct to support
both her breach of implied contract claim and her claim for
breach of the covenant of good faith and fair dealing.

This Court therefore FINDS that Plaintiff has failed to
establish a genuine issue of material fact as to her claim for
breach of the covenant of good faith and fair dealing, and it
CONCLUDES that Defendants are entitled to judgment as a matter of
law.  This Court GRANTS Defendants' Motion for Summary Judgment
as to Count III.

### 4. Count VI - Promissory Estoppel

In the 1/30/15 Order, this Court described the elements
of a promissory estoppel claim under Hawai`i law.  2015 WL
415890, at *12.  For similar reasons as those set forth regarding
Plaintiff's breach of implied contract claim, see supra Section
II.A.1, this Court FINDS that there are genuine issues of
material fact as to whether there was a promise to provide
Plaintiff with some form of lifetime compensation.  See In re
Herrick, 82 Hawai`i 329, 337-38, 922 P.2d 942, 950-51 (1996)
(setting forth the elements of promissory estoppel).

As to the third element, whether Plaintiff in fact
relied upon the promise, Plaintiff has submitted evidence that:

-she would not have taken the position without the promise of
  lifetime compensation because the wages and benefits
  associated with the position were below what she had earned
  working for Cavanaugh; [Pltf.'s Decl. at ¶¶ 47-49;]

22

-during her employment at the Property, she forwent any type of raise or benefits because of the promise of lifetime compensation; [id. at ¶ 53; Lautenbach Decl., Exh. B (Pltf.'s Response to Defs.' First Set of Interrogs.) at Response to Interrog. No. 6;]

-she forwent working with three businesses that she owned with her husband at the time she accepted the position, and she forwent starting a new business in 2008; [Pltf.'s Decl. at ¶¶ 59-60;] and

-she was forced to hire a manager to work with the three businesses [id. at ¶ 63, Exh. 16 (Aff. of Rudy Becker ("Becker Aff.") & list titled "Rudy Payments 2009 and 2010")].

Plaintiff argues that she and her husband paid Becker more than Plaintiff received working at the Property.  [Pltf.'s CSOF at ¶ 52.]

        Defendants contest Plaintiff's assertion that Pennington required her to work exclusively on the Property. They point to, _inter alia_, the fact that, while she was working there, she also "obtained her real estate license and remained an officer of several of her husband's companies."  [Defs.' CSOF at ¶ 30.]  Plaintiff admits these facts, but she asserts that she never used her real estate license, and that her roles in the businesses were limited.  [Pltf.'s CSOF at ¶ 30; Pltf.'s Decl. at ¶ 60 & n.16 (stating that she was a part of the businesses "on paper" and, for example, the extent of her involvement in Ironwood Ranch during her employment with Pennington "was that in January 2011 [she] offered Defendant Kent Green and his family, who were coming to Maui on vacation, free horseback riding

tours").]  Defendants also argue that Plaintiff's list of "Rudy
Payments 2009 and 2010" does not establish how much Plaintiff and
her husband paid Becker because it is unclear which line items
are salary related and which are other business expenses.
Becker, however, states that he served as the manager for three
of their businesses for six years, and he received "a monthly
salary plus a percentage share of the profits."  [Becker Aff. at
1.]  He also confirms that Plaintiff "did not participate in the
day to day business or have anything to do with" the three
entities.  [Id. at 2.]  Although this Court agrees with
Defendants that the list of 2009 and 2010 payments does not
establish the amount of Becker's pay, the other materials that
Plaintiff submitted establish that she and her husband hired
Becker because she could not both work with Pennington and work
with the three businesses.

        Viewing the record in the light most favorable to
Plaintiff, this Court finds that she has raised a genuine issue
of material fact as to her reliance on the alleged promise of
lifetime compensation, and the issue of whether that reliance was
reasonable involves credibility determinations that this Court
cannot make at the summary judgment stage.  It is a much closer
question whether Plaintiff's reliance was foreseeable.  However,
"[w]hen evaluating a motion for summary judgment, the court must
'view the facts and **draw reasonable inferences** in the light most

24

favorable to the party opposing the summary judgment motion.'" United States v. Staton, Civil No. 12-00319 ACK-KSC, 2015 WL 5121944, at *5 (D. Hawai`i Aug. 31, 2015) (emphasis added) (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)).  Under that standard, this Court finds that Plaintiff has raised a genuine issue of material fact as to whether her reliance was foreseeable.  Because there are triable issues as to the first three elements of a promissory estoppel claim, it follows that there are triable issues as to the fourth element, which is whether it would be unjust not to enforce the promise.

     This Court therefore FINDS that there are genuine issues of material fact as to Plaintiff's promissory estoppel claim, and it CONCLUDES that Defendants are not entitled to judgment as a matter of law.  Defendants' Motion for Summary Judgment is DENIED as to Count VI.

     **B.   Plaintiff's Other Claims**

          **1.   Count II - Wrongful Termination**

     The 1/30/15 Order construed the wrongful termination claim in the First Amended Complaint as a claim pursuant to Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625 (1982).  2015 WL 415890, at *7-8.  The First Amended Complaint, however, titled Count II "WRONGFUL TERMINATION - Violation of Public Policy," and contained specific allegations about the "public interest," "the public good," and "public policy."

[First Amended Complaint at pg. 18.]

Plaintiff's current wrongful termination claim does not allege a <u>Parnar</u> claim. Instead, it alleges that Pennington's statements "created an atmosphere of job security and fair treatment" and modified his right to terminate her at-will employment. [Third Amended Complaint at ¶¶ 40, 43.]

The Hawai`i Supreme Court has

> reaffirm[ed] the general principle that, in the absence of a written employment agreement, a collective bargaining agreement, or a statutorily-conferred right, employment is at-will. Such at-will employment is, "by definition, . . . terminable at the will of either party, for any reason or no reason at all." <u>Best Place</u>, 82 Hawai`i at 124, 920 P.2d at 357 (1996). As such, parties to an at-will employment contract enter into the contract with full knowledge that the employment is for an indefinite duration and can terminate at the will of either party. <u>Id.</u> Correlatively, an employment contract of indefinite duration will generally be construed as giving rise to an at-will employment relationship and as therefore terminable at the will of either party for any reason or no reason. <u>Parnar</u>, 65 Haw. at 374, 652 P.2d at 627.

<u>Shoppe v. Gucci Am., Inc.</u>, 94 Hawai`i 368, 383, 14 P.3d 1049, 1064 (2000) (some alterations in <u>Shoppe</u>) (some citations omitted). However, the Hawai`i Supreme Court also recognized that "the previously unfettered right of employers to discharge employees 'can be contractually modified and, thus, qualified by statements contained in employee policy manuals or handbooks issued by employers to their employees.'" <u>Id.</u> (quoting <u>Kinoshita v. Canadian Pac. Airlines</u>, 68 Haw. 594, 601, 724 P.2d 110, 115-16

26

(1986)).  This district court has stated that "Kinoshita does not

. . . require that an employment status can only be altered by an

employee manual.  Rather, the test appears to be whether,

considering all of the circumstances, the employer has 'created a

situation instinct with an obligation.'"  Leong v. Hilton Hotels

Corp., 689 F. Supp. 1565, 1571 (D. Hawai`i 1988) (some citations

and internal quotation marks omitted) (quoting Kinoshita, 724

P.2d at 117).

Plaintiff's position is that Pennington's statements,

including "Stick with me and I will take care of you for life,"

modified her at-will employment such that she could only be

terminated for cause.  Plaintiff does not dispute that her

employment at the Property was terminated after the Property was

sold in March 2012, following Pennington's death in May 2011.

[Defs.' CSOF at ¶ 25; Pltf.'s CSOF at ¶ 25.]  In fact, Plaintiff

herself submitted evidence that she was recommended to the

purchasers, but they did not need the services of a property

manager because they planned to spend much more time at the

Property than Pennington did.  An email dated February 24, 2012

to Plaintiff from a "Richard" states, inter alia:

> I wanted to let you know that the trustees have
> accepted an offer from a buyer for the
> residence. . . .
>
> If this deal goes through, it will close by
> April 1.  Of course you will be paid through
> April 1.  I talked to Sean and obviously gave you
> the highest recommendation possible for the new

> buyers (if you were interested).  Sean said that
> he had already talked to the new buyers about you,
> however it appears that they will be spending most
> of their time in Maui.  Sean wants to talk to you
> about other employment possibilities when you
> return.  Sean asked that you contact him upon your
> return.

[Pltf.'s Decl., Exh. 21 at 2.[7]]

Thus, even assuming, *arguendo*, that Plaintiff was an

at-will employee, and that Pennington modified her at-will

employment such that she could only be terminated for cause, the

undisputed evidence is that she was in fact terminated for cause

- the sale of the Property.  Plaintiff has pointed to evidence

that her conversations with Pennington and his wife led her to

believe that Mrs. Pennington would inherit the Property upon

Pennington's death, and that she would continue to work for

Mrs. Pennington.  [Pltf.'s CSOF at ¶ 13 (some citations omitted)

(citing Pltf.'s Depo. at 107:10-17).]  Plaintiff has presented no

evidence that, under the circumstances, her at-will employment

was modified because of "a situation instinct with an obligation"

that her employment after Pennington's death would be for any

minimum period of time.  There is no evidence that Plaintiff was

assured that Mrs. Pennington would not sell the Property or that

Plaintiff would somehow be guaranteed employment with anyone who

---

[7] Plaintiff's Exhibit 21 consists of multiple documents that are not consecutively paginated.  The citations to Exhibit 21 refer to the page numbers in the district court's electronic case filing system.

purchased the Property after Pennington's death.  In fact,
Plaintiff did remain employed at the Property for almost a year
after Pennington's death.

Thus, even viewing the record in the light most
favorable to Plaintiff, this Court FINDS that there are no
triable issues of fact and CONCLUDES that Defendants are entitled
to judgment as a matter of law as to Plaintiff's wrongful
termination claim.  This Court GRANTS Defendants' Motion for
Summary Judgment as to Count II.

### 2.    Count IV - Interference with Prospective Economic Advantage

Under Hawai`i law, a plaintiff must establish the
following elements to prove a claim of "intentional interference
with prospective business advantage":

> (1) the existence of a valid business relationship
> or a prospective advantage or expectancy
> sufficiently definite, specific, and capable of
> acceptance in the sense that there is a reasonable
> probability of it maturing into a future economic
> benefit to the plaintiff; (2) knowledge of the
> relationship, advantage, or expectancy by the
> defendant; (3) a purposeful intent to interfere
> with the relationship, advantage, or expectancy;
> (4) legal causation between the act of
> interference and the impairment of the
> relationship, advantage, or expectancy; and (5)
> actual damages.

Minton v. Quintal, 131 Hawai`i 167, 191, 317 P.3d 1, 25 (2013).
This district court has predicted that, "if presented with the
question, the Hawai`i Supreme Court would hold that a breach of
contract, even if done for improper purposes, does not without

29

more give rise to improper interference for purposes of a tortious interference with a prospective business advantage claim." 1/30/15 Order, 2015 WL 415890, at *9 (quoting <u>Kapunakea Partners v. Equilon Enters. LLC</u>, 679 F. Supp. 2d 1203, 1219 (D. Hawai`i 2009)).

The Third Amended Complaint only alleges Count IV against Green. [Third Amended Complaint at pg. 25.] However, Plaintiff has stated that she mislabeled the claim and intended to also assert Count IV against Bridgewater. [Dismissal Opp. at 16.] Even assuming, *arguendo*, that this Court construed Count IV as stating a claim against Green and Bridgewater, Plaintiff has failed to raise a triable issue of fact as to either Defendant. Plaintiff has not presented any evidence which establishes that either Green or Bridgewater engaged in other conduct beyond his or her alleged contribution to the breach of the implied agreement to provide Plaintiff with lifetime compensation.

Thus, even viewing the record in the light most favorable to Plaintiff, this Court FINDS that there are no triable issues of fact and CONCLUDES that Defendants are entitled to judgment as a matter of law as to Plaintiff's claim for wrongful interference with prospective economic advantage. This Court GRANTS Defendants' Motion for Summary Judgment as to Count IV.

3.   **Count V - Fraudulent Misrepresentation**

In the 1/30/15 Order, this Court described the elements of a fraudulent or intentional misrepresentation claim under Hawai`i law.  2015 WL 415890, at *10.  Plaintiff bases her fraudulent misrepresentation claim on Pennington's statements, primarily the statement: "Stick with me and I will take care of you for life."  She argues that "Defendants have failed to deny that Mr. Pennington made the statement at issue, and in fact admitted to the statement.  Either Mr. Pennington was truthful when he made the statement, or made a false representation." [Summary Judgment Opp. at 41 (footnote omitted).]  Plaintiff's position is that Pennington made the statements in his individual capacity and on behalf of WNP and Western.  [Id.]  She does not allege that Green or Bridgewater made fraudulent statements to her.  Instead she alleges that they are responsible for the promises that Pennington made to her in his business capacities because of Green's and Bridgewater's positions with WNP and Western.  [Pltf.'s CSOF at ¶¶ 33-34.]

Even assuming, *arguendo*, that Plaintiff's fraudulent misrepresentation claim is properly pled, see 1/30/15 Order, 2015 WL 415890, at *11 (describing the heightened pleading standard for fraud-based claims), this Court would still conclude that Plaintiff's claim cannot survive summary judgment.  As this Court noted in the 1/30/15 Order,

31

the false representation forming the basis of a
fraud claim "must relate to a past or existing
material fact and not the occurrence of a future
event." <u>Joy A. McElroy, M.D., Inc. v. Maryl
Group, Inc.</u>, 107 Hawai`i 423, 433, 114 P.3d 929,
939 (Ct. App. 2005) (citations and block quote
format omitted) (emphasis in original).  Further,
even if the allegations satisfy the other elements
of a fraud claim, "[f]raud cannot be predicated on
statements which are promissory in their nature,
or constitute expressions of intention, and an
actionable representation cannot consist of mere
broken promises, unfulfilled predictions or
expectations, or erroneous conjectures as to
future events[.]"  <u>Id.</u> (citations and block quote
format omitted) (emphasis in original).  The
exception to this general rule is that "**[a]
promise relating to future action or conduct will
be actionable, however, if the promise was made
without the present intent to fulfill the
promise.**"  <u>Id.</u> (citations and block quote format
omitted) (emphasis in <u>McElroy</u>).

<u>Id.</u> at *10 (alterations in 1/30/15 Order) (emphasis added).

Pennington's purported statements related to future

events - how Plaintiff would be compensated in the event that

Pennington died while she was working at the Property.  In order

to prevail on a fraudulent misrepresentation claim based on such

statements about future events, Plaintiff must establish that

Pennington made the statements without a present intent to

fulfill the promise.  Plaintiff has not presented any evidence

that raises a triable issue of fact as to that subject.  Insofar

as Plaintiff's fraudulent misrepresentation claim against each

Defendant is based upon Pennington's alleged promise, this Court

FINDS that Plaintiff has failed to identify sufficient evidence

to her claim, in its entirety.  Thus, there is no triable issue

of fact, and this Court CONCLUDES that Defendants are entitled to judgment as a matter of law as to Plaintiff's fraudulent misrepresentation claim.  Defendants' Motion for Summary Judgment is GRANTED as to Count V.

### C. __Proper Parties__

        In light of this Court's rulings, the only remaining claims are Count I - Plaintiff's breach of implied contract claim - and Count VI - Plaintiff's promissory estoppel claim.  It is undisputed that Pennington hired Plaintiff, but she argues that he was acting both in his individual capacity and in his capacities with WNP and Western when he hired her.  Plaintiff has submitted, *inter alia*, organizational documents for the two entities, [Summary Judgment Opp., Exh. 1 (documents regarding Western), Exh. 2 (documents regarding WNP),] as well as evidence that she was paid by checks from Western and WNP throughout her employment.  [Pltf.'s Decl. at ¶ 55, Exh. 14 (sample checks).] This Court therefore FINDS that she has presented sufficient evidence to raise triable issues of fact as to her claims against the Trustee Defendants, Western, and WNP.

        Plaintiff, however, has not presented any evidence that would support a breach of implied contract claim or a promissory estoppel claim against either Green or Bridgewater, individually. At most, they are relevant witnesses regarding Plaintiff's claims against the other Defendants.  This Court FINDS that Plaintiff

has failed to identify sufficient evidence to support her claims in Counts I and VI against Green and Bridgewater.  Thus, there is no triable issue of fact, and this Court CONCLUDES that Green and Bridgewater are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment is GRANTED as to the portions of Counts I and VI against Green and Bridgewater.

**III. Plaintiff's Request for Summary Judgment and Defendants' Motion to Dismiss**

In the Summary Judgment Opposition, Plaintiff asks this Court to award summary judgment in her favor pursuant to Fed. R. Civ. P. 56(f)(1) and Local Rule 56.1(i).  The only remaining claims are Counts I and VI, and this Court has found that there are genuine issues of material fact as to those claims.  This Court therefore cannot grant summary judgment in Plaintiff's favor as to those claims.

Further, in light of this Court's rulings regarding Defendants' Motion for Summary Judgment, this Court CONCLUDES that their Motion to Dismiss is moot.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion for Summary Judgment, filed June 26, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART.  Specifically, this Court: 1) GRANTS summary judgment in favor of Defendants as to Counts II, III, IV, V, and VII; 2) GRANTS summary judgment in favor of Defendants Kent Green and Rachel Bridgewater as to Counts I and VI; and 3) DENIES

34

Defendants' Motion for Summary Judgment as to all other portions of Counts I and VI.  There being no remaining claims against Green and Bridgewater, this Court DIRECTS the Clerk's Office to terminate them as parties.

In light of this Court's rulings on the Motion for Summary Judgment, Plaintiff's request for summary judgment pursuant to Fed. R. Civ. P. 56(f)(1) and Local Rule 56.1(i) is HEREBY DENIED, and Defendants' Motion to Dismiss the Third Amended Complaint for Damages and Equitable Relief, filed May 19, 2015, is HEREBY DENIED AS MOOT.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 30, 2015.



      /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RONI DU PREEZ VS. RICK BANIS, ET AL; CIVIL 14-00171 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS**